FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 AUG -6  P 4:03

AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES FIDELITY & * 
GUARANTY COMPANY
 *
 Plaintiff
 *
 vs. CIVIL ACTION NO. MJG-02-1947
 *
ALEXANDER CONSTRUCTORS, INC.
 *
 Defendant
*     *     *     *     *     *     *     *     *

## MEMORANDUM AND ORDER

The Court has before it Plaintiff's Motion For a Preliminary Injunction, Defendant's Cross-Motion to Compel Arbitration, and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

The essential facts are undisputed and can be stated succinctly.

In June of 1998, CCI Construction Co., Inc. ("CCI"), a general contractor, entered into a contract (the "Original Contract") with the United States Department of Agriculture ("Owner") to construct certain laboratory facilities (the "Project"). In due course, Plaintiff United States Fidelity & Guaranty Company ("USF&G") issued performance and payment bonds pursuant to the Miller Act on behalf of CCI securing CCI's contractual obligations on this Project.

On or about February 22, 2000, CCI voluntarily terminated its performance on the Original Contract while the project was incomplete. On or about March 10, 2000, the Owner formally terminated CCI's right to proceed under the Original Contract and made a demand on USF&G's performance bond.

In response to the Owner's claim, on or about April 26, 2000, USF&G entered into a Takeover Agreement with the Owner contracting to complete performance. On/or about that same date, USF&G contracted with Alexander Constructors, Inc. ("Alexander") to complete construction of the Project (the "Completion Agreement").

As pertinent hereto, the Completion Agreement provides:

> Any disputes between the Surety and the
> Completion Contractor not involving the Owner
> in any way shall be decided by arbitration...

Completion Agreement ¶ 17.E.

The Completion Agreement also incorporated by reference the contractual remedial procedure in the Original Contract, providing that the Federal Acquisition Regulations and the Contract Disputes Act will govern disputes with the Owner. Therefore, Alexander had to certify and present claims to the Owner's contracting officer and appeal any unfavorable decision to the Board of Contract Appeals or the Court of Federal Claims. Furthermore, the Completion Agreement provided that:

> The Completion Contractor shall first pursue and fully exhaust said procedure before commencing any other action against the Surety for any claims it may have arising out of its performance of the work herein.

As expressed by Plaintiff:

> The purpose of the dispute resolution procedures is to protect USF&G from liability to the Owner under the Takeover Agreement by defining and presenting those claims and/or delay events for which the Owner is liable as a necessary precursor to assessing any further liability to Alexander and to protect USF&G from having to advance funds to pay for Alexander's claims for which the owner is liable.

Pl. Mem. In Support of its Motion for a Prelim. Inj.

Alexander was unable to complete the Project by the December 24, 2000 deadline set in the Completion Agreement. On April 17, 2002, Alexander, asserting that it was not at fault for the delay, submitted to USF&G a Preliminary Request for Equitable Adjustment ("REA") setting forth all claims of which it had knowledge on April 15, 2002. The REA, therefore, included claims based on defective work by CCI, acts and omissions of Olsson Associates (the Owner's Agent), acts and omissions of the architect (acting for the Owner), etc. Also, on April 17, 2002, Alexander submitted an arbitration demand to the American Arbitration Association.

Although there may have been some ambiguity as to the scope of the demanded arbitration, Alexander has made it perfectly clear to this Court that:

> Although the REA is a complete and unitary catalog of all claims about which Alexander could have knowledge as of April 15, 2002, regardless of what party or parties bore ultimate responsibility, Alexander has no intention of presenting in arbitration <u>any</u> claim beyond the scope of paragraph 17(E) of the Completion Agreement. Rather, the only claims from the REA that Alexander intends to pursue in arbitration are those "<u>not</u> involving the Owner in any way" (<u>Id.</u> At 9, ¶ 17(E) (emphasis original)), <u>i.e.</u>, claims as to which <u>only</u> USF&G can be held liable and as to which the acts or omissions of USDA and its representative are not germane.

Def. Br. In support of Cross-Mot. to Compel Arb. 3 - 4.

There need be little discussion of the legal principle involved in the case. As stated by Chief Judge Wilkinson in <u>Hightower v. GMRI, Inc.</u>, 272 F.3d 239, 241(4th Cir. 2001)(Nov. 14, 2001):

> In the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, Congress endorsed arbitration as a less formal and more efficient means of resolving disputes than litigation. The Supreme Court has noted that the FAA represents "a liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Because FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists. <u>See Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).

If the question of arbitrability turns upon whether procedural prerequisites to arbitration have been met, it is for the arbitrator, not the court, to resolve the questions, <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543 (1964).

USF&G raises the question whether the Completion Agreement must be interpreted to require Alexander to pursue and exhaust all procedures against the Owner before proceeding in arbitration against the Surety on claims that do not in any way involve the Owner. The Court finds that USF&G's position may be nonfrivolous but it is by no means a compelling one. It may well be that resolution of certain of the claims purportedly against USF&G (but not the Owner) might result in USF&G's having a claim against the Owner. If so, it may well be appropriate to consider those claims excluded from arbitration because it cannot be said that they do not involve the owner <u>in any way</u>. Nevertheless, to the extent that there are, in fact, any claims against USF&G that do not involve the Owner in any way, a reasonable interpretation of the contract would permit arbitration of those particular claims even if other claims involving the Owner remain unresolved. The interpretation of the Completion Agreement in this respect is for the arbitrator.

In sum, the Court concludes that the underlying controversy, involving only those claims that Alexander contends do not

involve the Owner in any way, should proceed to arbitration. Of course, the arbitrator must examine each putatively arbitrable claim and decide whether or not the particular claim involves the Owner in any way.

For the foregoing reasons:

1. Plaintiff's Motion For a Preliminary Injunction is DENIED.

2. Defendant's Cross-Motion to Compel Arbitration is GRANTED.

3. Judgment shall be entered by separate Order

SO ORDERED this 6th day of August, 2002.

_____
Marvin J. Garbis
United States District Judge